IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NERBASKA

| | | |
|---|---|---|
| NICANDRA OZUNA CARLON, | ) | Case No. |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEROME KRAMER, Lincoln County Sheriff; PETER BERG, Director, United States Immigration and Customs Enforcement St. Paul Field Office; TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary, United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; MARCO RUBIO, United States Secretary of State; DONALD J. TRUMP, President of the United States, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PETITION FOR WRIT OF HABEAS CORPUS** |
| | ) | |
| Respondents. | ) | |

## INTRODUCTION

1. Petitioner Nicandra Ozuna Carlon is in custody at the North Platte Detention Center under the same circumstances as Floribertha Mayo Anicasio, Yanier Garcia Jimenez, and Maria Reynosa Jacinto, in all relevant respects. *See Mayo Anicasio v. Kramer et al*, 25-cv-3158 (D. Neb. 2025); *Garcia Jimenez v. Kramer et al*, 25-cv-3162 (D. Neb. 2025); *Reynosa Jacinto v. Trump et al*, 25-cv-3161 (D. Neb. 2025). Like in those cases, Ozuna Carlon's continued detention violates her right to due process and federal law.

2. Ozuna Carlon was swept up in the Glenn Valley Foods raid and arrested pursuant to 8 U.S.C. § 1226(a). Ex. 1-1, Warrant for Arrest of Alien (June 11, 2025).

Warrant for Arrest of Alien (June 11, 2025); Ex. 1-2 Notice to Appear (classifying Lorenzo Perez as an "alien present in the United States," *not* an "arriving alien"). DHS made an initial custody determination under 8 U.S.C. § 1226 and informed her she had a right to a custody re-determination hearing. Ex. 1-3, I-286 Notice of Custody Determination (June 11, 2025).

3. An immigration judge (IJ) granted her release on bond, which she promptly posted. Ex. 1-4, Order of the Immigration Judge (July 10, 2025); Ex. 1-5, Bond Memorandum of the Immigration Judge (July 17, 2025); Ex. 1-6, ICE Form I-352, at 3. The government disagreed with the IJ and filed a boilerplate form to trigger the automatic stay regulation—unilaterally overriding the IJ's decision. *See* 8 C.F.R. § 1003.19(i)(2).

4. The U.S District Court for the District of Nebraska has now ruled three times that detention under those circumstances is unlawful and unconstitutional. Yet Ozuna Carlon remains in custody for the duration of her bond appeal, or even longer, despite a valid order mandating her release. The government's use of the automatic stay regulation to keep Ozuna Carlon in custody is an unconstitutional deprivation of due process and *ultra vires*.

5. Ozuna Carlon seeks habeas relief under 28 U.S.C. § 2241, which is the proper vehicle for challenging her unlawful detention.

6. She respectfully requests that the Court find her detention unlawful and unconstitutional and issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to (a) allow her to re-post bond, and (b) immediately release

her from custody after bond is posted. In the alternative, Ozuna Carlon respectfully requests the Court order Respondents to show cause why this Petition should not be granted within three days.

## CUSTODY

7.   Ozuna Carlon is currently in the custody of the Lincoln County Detention Center in North Platte, Nebraska—hundreds of miles from her home. She is in the physical custody of Respondents and under the direct control of Respondents and their agents. Although she is in physical custody in Lincoln County, she is detained by ICE and has been in ICE custody since June 10, 2025.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331.

9.   Venue is proper in this District under 28 U.S.C. § 1391 and 28 U.S.C. § 2242 because Ozuna Carlon is confined in this District, at least one Respondent is in this District, Ozuna Carlon's immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District. *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005–06 (2025) (per curiam) ("For core habeas petitions, jurisdiction lies in only one district: the district of confinement" (internal quotation marks and citation omitted)).

## HABEAS CORPUS

10.   A petitioner is entitled to habeas relief if she demonstrates that her detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

11. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 20 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

12. The Court has inherent power to release Ozuna Carlon pending review of their petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

13. Respondent Jerome Kramer is the Lincoln County Sheriff and has physical and administrative custody over Ozuna Carlon. He is named in his official capacity.

14. Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Ozuna Carlon and is named in his official capacity.

15. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Ozuna Carlon and is named in his official capacity.

16. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Ozuna Carlon and is named in her official capacity.

17. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Ozuna Carlon and is named in her official capacity.

18. Respondent Marco Rubio is the United States Secretary of State. He is a legal custodian of Ozuna Carlon and is named in his official capacity.

19. Respondent Donald J. Trump is the President of the United States. He is a legal custodian of Ozuna Carlon and is named in his official capacity.

## FACTUAL ALLEGATIONS

### A. Background

20. Ozuna Carlon is a longtime Nebraska resident. She was born in Mexico but has lived in the United States since 2004. She is a single mother of two United States citizen children, ages 15 and 20. For more than 20 years, Ozuna Carlon has worked hard, paid taxes, raised her family, and contributed to the Nebraska community.

21. Ozuna Carlon is hundreds miles away from her children, and it is very difficult for them to visit her. Her youngest is now living with relatives. Her son, the oldest, has taken on extra work to try to support his mother and sister.

22. Ozuna Carlon is a pillar of her family and the community, with strong familial, economic, and personal ties to Nebraska. She has no criminal record and has never had any legal issues whatsoever, until the current civil proceedings.

23. On June 10, 2025, Ozuna Carlon worked her usual shift as an employee of the Glenn Valley Foods meatpacking plant in Omaha, Nebraska. While she was working, ICE carried out a large-scale raid of the plant. Nearly 100 people were arrested, and more than 70 were taken into custody. Ozuna Carlon was one of the people arrested and detained.

5

24. The raid marked an escalation in immigration enforcement: Instead of focusing on immigrants with serious criminal backgrounds, ICE detained longstanding community members with close ties to Nebraska and no criminal history.

25. Some detainees were immediately deported or relocated. The remaining detainees, including Ozuna Carlon, were transferred to the Lincoln County Detention Center in North Platte. Ozuna Carlon remains in custody on civil immigration charges.

**B. Detention and Bond Hearing**

26. Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19, 1236.1. The discretionary detention provision, 8 U.S.C. § 1226(a), applies only to noncitizens without serious criminal convictions. It contrasts with the mandatory detention provision, 8 U.S.C. § 1226(c), which applies to noncitizens convicted of certain criminal offenses or involved in terrorist activities and requires continued detention.

27. Because Ozuna Carlon has no criminal record, she was arrested and detained under Section 1226(a). *See* Exs. 1, 2.

28. When a noncitizen is detained under Section 1226(a), DHS makes the initial custody determination, but the detainee can request reconsideration by an IJ.

Here, DHS initially detained Ozuna Carlon without bond. *See* Ex. 1-3. Ozuna Carlon then requested a bond redetermination hearing in front of an IJ.

29. At the bond redetermination hearing on July 10, the IJ heard evidence and argument from Ozuna Carlon and the government. Ozuna Carlon emphasized her strong ties to the community and lack of criminal history, and she submitted numerous letters of support from friends and family. DHS argued for the first time that Ozuna Carlon is subject to mandatory detention under a different provision, 8 U.S.C. § 1225(b)(2)(A), which governs the inspection process for noncitizen "applicants for admission" who are "seeking admission" into the country—new arrivals to the country.

30. In accordance with decades of practice, the IJ rejected DHS's novel argument that Ozuna Carlon is subject to mandatory detention. *See* Ex. 1-5. The IJ also made specific findings of fact that Ozuna Carlon is not a danger or substantial flight risk and ordered Ozuna Carlon be released on bond. *Id.* She posted a $20,000 bond the next day. Ex. 1-6.

31. Meanwhile, DHS filed a Form EOIR-43 "Notice of Intent to Appeal the Custody Redetermination," unilaterally triggering the automatic stay provision of 8 C.F.R. § 1003.19(i)(2). Filing that form blocked the IJ's order, at least for the pendency of the appeal to the Board of Immigration Appeals (BIA).

32. In other words, DHS—the prosecutor—is not bound by the IJ's determination. The prosecutor disagreed with the IJ's decision and unilaterally overrode the order by filing a boilerplate form.

7

33. Ozuna Carlon now remains in custody in contravention of the IJ's order. DHS's appeal to the BIA can take months. And as explained more fully below, even resolution of the appeal may not immediately end the automatic stay.

### C. Automatic and Discretionary Stay Regulations

34. The relevant regulations provide two distinct mechanisms for staying an IJ's custody order while the government appeals the decision: (1) discretionary stays from the BIA, and (2) automatic stays like the one used here.

35. Under the first mechanism—discretionary stay—DHS files a motion and must persuade the BIA that a stay is warranted. 8 C.F.R. § 1003.19(i)(1). The BIA serves as a neutral adjudicator and weighs the merits of DHS's position. The BIA ultimately makes the decision about whether to grant the stay. DHS could have used that mechanism in this case but did not.

36. Instead, DHS used the second mechanism: the automatic stay. This mechanism involves no neutral adjudicator considering the merits. Rather, it allows the prosecutor—who lost before the IJ—to unilaterally stay the IJ's decision.

37. Regulations provide that DHS's automatic stay will lapse in 90 days absent a BIA decision on the appeal. 8 C.F.R. § 100.36(c)(4). But there are multiple avenues for extension. For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains in effect for another 30 days while the BIA decides whether to grant a discretionary stay. *Id.*

38. Likewise, even if the BIA rules in favor of Ozuna Carlon on appeal and authorizes her release on bond, that release is automatically stayed for five more business days to give DHS a chance to refer the case to the Attorney General. 8 C.F.R. § 1003.6(d). Then, if DHS refers the case to the Attorney General, the automatic stay is extended for another 15 days. *Id*. The Attorney General may then stay release for the pendency of the case. *Id*. There is no prescribed time limit for final resolution of the custody determination, meaning an individual may remain in detention indefinitely.

39. In sum, Ozuna Carlon has no way of knowing how long this automatic stay will last and has no opportunity to challenge the stay. In practice, the automatic stay regulation renders the IJ's custody decisions ineffectual: If DHS disagrees with a custody decision, it can keep Ozuna Carlon detained for a *minimum* of 90 days, without a truly discernable end point.

40. Meanwhile, Ozuna Carlon is in custody and her conditions of confinement are indistinguishable from criminal incarceration: She is separated from family, housed in a facility with criminal defendants, and subject to Lincoln County Detention Center's detention rules.

## LEGAL FRAMEWORK

41. The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. amend. V. These substantive and procedural due process protections apply to all people, including noncitizens, regardless of their immigration status. *Trump v.*

9

*J.G.G.*, 604 U. S. ---145 S. Ct. 1003, 1006 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439 (1993)). The automatic stay of Ozuna Carlon's release violates her rights to substantive and procedural due process.

42. The automatic stay regulation is also an *ultra vires* regulation that unlawfully grants authority to DHS that Congress has delegated only to the Attorney General.

**A. Substantive Due Process**

43. The Due Process Clause provides heightened protection against government interference with certain fundamental rights—and freedom from detention lies at the heart of the Due Process Clause's protections. Detention by the government violates due process in civil proceedings *unless* "a special justification . . . outweigh[s] the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, (2001).

44. The automatic stay regulation was originally enacted in October 2001, in response to the September 11 terrorist attacks, without any opportunity for public comment.

45. Its enactment marked a drastic change in practice. Before the automatic stay, there was only one route to stay an IJ's custody determination: a discretionary stay from the BIA. The Immigration and Nationality Service (DHS's predecessor) was

required to demonstrate to the BIA that it was likely to succeed on the merits and would suffer irreparable harm in the interim. The automatic stay provided a second, much easier route: simply filing a short Form EOIR-43, without any need for an adjudicator to weigh in.

46. The purported purpose of the automatic stay is to protect the public and "enhance agencies' ability to effect removal should that be the ultimate final order in a given case." *Executive Office of Immigration Review; Review of Custody Determination*, 71 Fed. Reg. 57873, 57874 (Oct. 2, 2006).

47. But in Ozuna Carlon's case, DHS did not present evidence or argument that she is a flight risk or danger to the community. *See* Ex. 1-5 (noting the only issue DHS reserved for appeal is the novel mandatory detention claim). After a full hearing, the IJ determined that Ozuna Carlon is not a danger or substantial flight risk. Ex. 1-5. To the extent the government has concerns about safety or flight, the IJ already addressed them.

48. The government has no special or compelling justification to continue detaining Ozuna Carlon, and certainly not an interest that outweighs Ozuna Carlon's interest in avoiding government restraint. *See Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077 (N.D. Cal. 2004) ("The regulation, which permits unilateral government detention of individuals without a case-by-case determination after a reasoned finding that they do not pose threat to safety or a risk of flight, violates the Due Process Clause because no special justification exists that outweighs the individual's constitutionally protected interest in avoiding physical restraint."); *Ashley v. Ridge*,

288 F. Supp. 2d 662, 669 (D.N.J. 2003) ("[T]he Government has not shown that any 'special justification' exists which outweighs Petitioner's constitutional liberties so as to justify his continued detention without bail.").

49. Finally, a less-restrictive means exists through which DHS can obtain a stay: the discretionary stay regulation requiring DHS to seek an emergency stay from the BIA. 8 C.F.R. § 1003.19(i)(1). That regulation protects DHS's interest in obtaining a stay without unduly infringing on Ozuna Carlon's liberty. *See, e.g., Dep't of State v. Munoz*, 602 U.S 899, 910 (2024) ("When a fundamental right is at stake, the government can act only by narrowly tailored means that serve a compelling state interest.").

50. The government's application of the automatic stay regulation and continued detention of Ozuna Carlon violate her substantive due process rights.

**B. Procedural Due Process**

51. Due process also requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Ozuna Carlon received no such opportunity: Although she received a full bond hearing in front of the IJ, the prosecutor's unilateral stay of the IJ's order rendered that hearing meaningless.

52. To determine whether government conduct violates procedural due process, the Court weighs three factors: (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of the private interest, and the extent to which that risk could be reduced

12

by additional safeguards; and (3) the government's interest in maintaining the current procedures. *Id.* at 335.

### *Private Interest*

53. Ozuna Carlon's private interest is the right to be free from government detention. This interest is of the highest constitutional import.

54. Ozuna Carlon's conditions of detention further tip this factor in her favor. *See Günaydın v. Trump*, __ F. Supp. 3d __, File No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at *7 (D. Minn. May 21, 2025). She is in custody 300 miles from her home and family. Her children have to drive four hours to visit her.

55. Despite being in custody for a civil offense, she is detained with and subject to the same rules as those incarcerated for criminal offenses. She cannot move freely, sleep in her own bed, or spend time with her loved ones. She has very little privacy. She faces months in continued detention pending the bond appeal.

56. The private interest here is fundamental: freedom from detention. It weighs heavily in the weighing of the *Mathews* factors.

### *Risk of Erroneous Deprivation*

57. Similarly, the risk of erroneous deprivation of Ozuna Carlon's liberty is substantial. Ozuna Carlon prevailed at the bond redetermination hearing. The stay is not based on any new evidence, finding of legal error, or finding of likelihood of success on appeal.

58. Its application permits prosecuting officials who participated in the adversarial process—and lost—to unilaterally override the adjudicator's decision.

"Such a rule is anomalous in our legal system," and it represents a basic conflict that has been disapproved of in this context and others. *Günaydın*, 2025 WL 1459154, at *8; *see also Marcello v. Bonds*, 349 U.S. 302, 305–06, 75 S. Ct. 757 (1955) (holding that officer adjudicating immigration case cannot undertake prosecutorial role in the same matter); *Ashley,* 288 F. Supp. 2d at 671 ("It produces a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified.") (citation altered).

59. The automatic stay runs counter to the typical judicial process. A stay is an extraordinary remedy. In the civil context, a stay is never granted as of right. Rather, the movant must show a likelihood of success on the merits, a risk of irreparable injury, and that the balance of interests tips in the movant's favor. In contrast, the automatic stay regulation does not require the government to make any showing to an adjudicator. And here, the risk is greater than an ordinary civil case. Detention is at issue. Ozuna Carlon is facing a loss of liberty.

60. Ozuna Carlon also has no method to challenge the automatic stay decision. She is at the whim of DHS with no meaningful opportunity for review. Under these procedures, the risk of erroneous deprivation is great.

61. At the same time, there is a readily available substitute procedure that could ameliorate these risks: DHS could seek an emergency discretionary stay from the BIA pursuant to 8 C.F.R. § 1003.19(i)(1).

*Government Interest*

62. The government's interest here carries little weight in comparison.

63. The stated purpose of the automatic stay provision is to prevent the noncitizen from fleeing and protect the public from potential harm. But the IJ already made specific findings that Ozuna Carlon is not a flight risk nor a danger to the community. To the extent the government has concerns about safety or flight, the IJ already addressed them.

64. On balance, the private interests affected and the risk of erroneous deprivation under the current procedures greatly outweigh the government's interest. Process is not meaningful when a prosecutor who loses in front of an IJ can unilaterally override the IJ's decision. *See Ashley*, 288 F. Supp. at 668 ("[T]he automatic stay provision renders the Immigration Judge's bail determination an empty gesture.").

**C. Ultra Vires**

65. The automatic stay regulation exceeds the authority given to the Attorney General by Congress and unlawfully eliminates IJs' discretionary authority to make custody determinations.

66. Congress gave the Attorney General discretion to decide whether to release detained noncitizens pending removal proceedings if they have not been convicted of certain criminal offenses and are not linked to terrorist activities. *See* 8 U.S.C. § 1226(a), (c). The Attorney General has delegated this authority to IJs, who have discretion to determine whether to release these noncitizens on bond. 8 C.F.R.

§§ 1003.19, 1236.1; *see also* 28 U.S.C. § 510 (permitting the Attorney General to delegate her function to officers or employees within the Department of Justice).

67. Congress has not delegated this authority to DHS. There is no statutory authority for DHS to unilaterally stay an IJ's bond determination. DHS's use of the automatic stay is an unlawful use of the discretionary power granted to the Attorney General and "has the effect of mandatory detention of a new class of aliens, although Congress has specified that such individuals are not subject to mandatory detention." *Zavala*, 310 F. Supp. 2d at 1079; *see also Ashley*, 288 F. Supp. 2d at 673 ("As Congress specifically exempted aliens like Petitioner from the mandatory detention of § 1226(c), it is unlikely that it would have condoned this back-end approach to detaining aliens like Petitioner through the combined use of § 1226(a) and § 3.19(i)(2).").

68. Here, the IJ determined that Ozuna Carlon is not a danger to the community or a sufficient flight risk and ordered DHS release her on bond.

## FIRST CAUSE OF ACTION

### Violation of Fifth Amendment – Substantive Due Process

69. Ozuna Carlon realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

70. The U.S. Constitution establishes the right to due process for all persons within the United States, including noncitizens, whether their presence here is lawful or unlawful.

71. Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Ozuna Carlon has been deprived of her liberty.

72. The government's continued detention of Ozuna Carlon is not supported by any special interest or compelling justification that outweighs her liberty interest. The application of the automatic stay violates Ozuna Carlon's substantive due process rights.

## SECOND CAUSE OF ACTION

### Violation of Fifth Amendment – Procedural Due Process

73. Ozuna Carlon realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

74. Due process requires the opportunity to be heard at meaningful time and in a meaningful manner. Ozuna Carlon has not received that opportunity here.

75. Ozuna Carlon's liberty interest and the risk of erroneous deprivation far outweigh the government's interest in continued detention. There is also an alternative process available that allows the government to request a stay from the BIA. The automatic stay violates Ozuna Carlon's procedural due process rights.

## THIRD CAUSE OF ACTION

### *Ultra Vires* Regulation

76. Ozuna Carlon realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

77. Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings. The Attorney General has delegated that authority to IJs.

78. The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports to give DHS the authority to unilaterally override the IJ's decision. It is unlawful and *ultra vires*.

## PRAYER FOR RELIEF

Petitioner Nicandra Ozuna Carlon respectfully requests this Court grant the following:

(1) Assume jurisdiction over this matter;

(2) Order the immediate release of Petitioner pending these proceedings, pursuant the Court's inherent power;

(3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

(4) Declare that Petitioner's detention violates the Fifth Amendment and is *ultra vires*;

(5) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody in accordance with the bond order from IJ Larsen, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

(6) Award Petitioner reasonable attorneys' fees and costs; and

(7) Grant any further relief the Court deems just and proper.

Dated this 26th day of August, 2025.

                                      Nicandra Ozuna Carlon,
                                      PETITIONER.

                                      By: /s/ *Sydney L. Hayes*
                                      Sydney L. Hayes, #27051
                                      Kaitlin A. Madsen, #27359
                                      Daniel J. Gutman, #26039
                                      Alex Arkfeld, #27277
                                      GUTMAN LAW GROUP
                                      P.O. Box 485
                                      Omaha, Nebraska 68101
                                      (402) 570-8836
                                      sydney@gutmanllc.com

                                      ATTORNEYS FOR PETITIONER

## VERIFICATION

Pursuant to 28 U.S.C. § 2242 and 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing Petition for a Writ of Habeas Corpus are true and correct.

Executed this 25 day of August, 2025.

_____
Nicandra Ozuna Carlon